884 F.2d 1550
 UNITED STATES of America, Appellee,
v.
Luis COLON, a/k/a "Louie," John Wilks, a/k/a "Anthony
Smith," a/k/a "Smitty," Theofanis Papathanasion,
a/k/a "Theodoros Papadopoulos,"
Christopher Spivey and
Frederick Jackson,
Defendants.
Appeal of Theofanis PAPATHANASION, a/k/a "Theodoros
Papadopoulos," Defendant.
 No. 1354, Docket 89-1141.
 United States Court of Appeals,
Second Circuit.
 Argued July 19, 1989.
Decided Sept. 6, 1989.
 
 Roger Bennet Adler, New York City, for defendant.
 Patrick J. Fitzgerald, Asst. U.S. Atty., S.D.N.Y., New York City (Benito Romano, U.S. Atty., for the S.D.N.Y., Vincent L. Briccetti, Asst. U.S. Atty., New York City, of counsel), for appellee.
 Before WINTER and MAHONEY, Circuit Judges, and RE,* Judge.
 WINTER, Circuit Judge:
 
 
 1
 This appeal raises questions concerning the application of the Sentencing Guidelines and appellate review under the Sentencing Reform Act of 1984 (as amended), 18 U.S.C. Sec. 3551 et seq. and 28 U.S.C. Sec. 991 et seq. Theofanis Papathanasion appeals from a sentence of eighteen months' imprisonment and three years' supervised release imposed after his guilty plea to a charge of distributing heroin within one thousand feet of a public school in violation of 21 U.S.C. Secs. 812, 841(a)(1), 841(b)(1)(C), and 845a(a), and 18 U.S.C. Sec. 2. Appellant Theofanis Papathanasion claims that Judge Walker erred in failing to reduce his offense level from 11 to 7 because he was a "minimal participant" in the offense under Section 3B1.2(a) of the Sentencing Guidelines promulgated by the United States Sentencing Commission pursuant to 28 U.S.C. Sec. 994(a). Alternatively, he claims that his offense level was 9 because he was a "minor participant" under Section 3B1.2(b) of the Guidelines. We affirm on those claims. He also asserts that it was error not to depart downward from the sentencing range stipulated by the Guidelines in light of this heroin addiction and the amount of drugs involved. We hold that the discretionary failure to depart downward is not appealable and dismiss.
 
 BACKGROUND
 
 2
 In March 1988, the New York City Police Narcotics Task Force began an investigation of heroin distribution in the Hell's Kitchen neighborhood of Manhattan. The surveillance lasted several months and culminated in the arrests of Papathanasion and several confederates: Luis Colon, John Wilks, Christopher Spivey and Frederick Jackson. Papathanasion was named in three counts of a sixteen-count indictment. Count One charged him and the others with a conspiracy to distribute, and to possess with intent to distribute, heroin. Count Six charged Papathanasion with the distribution of two glassine envelopes of heroin on April 20, 1988. Count Nine charged him and Wilks with a similar distribution of two envelopes on May 3, 1988.
 
 
 3
 Papathanasion pleaded guilty to Count Nine. The presentence report prepared by the United States Probation Office assigned him an adjusted offense level of 11 and a criminal history category of IV, establishing a sentencing range of eighteen to twenty-four months. On February 21, 1989, Judge Walker sentenced him to a term of eighteen months in prison and three years' supervised release.
 
 DISCUSSION
 
 4
 Papathanasion asserts two claims of error based on Guidelines Section 3B1.2.[1] First, he argues that he should have received an offense level reduction of four levels, from 11 to 7, because he was a "minimal participant" under Section 3B1.2(a) in the heroin distribution scheme. In support, he claims to have played only a limited role in the May 3, 1988 drug transaction underlying the count to which he pleaded guilty. Because he handled neither drugs nor money in the exchange but merely directed the buyer, an undercover officer, to Wilks for the sale, Papathanasion claims he was merely "steering" business to Wilks and was thus only minimally involved.
 
 
 5
 The Commentary to Guidelines Sec. 3B1.2 states that that Section "is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group" and offers adjustment for only those whose conduct "makes [them] substantially less culpable than the average participant." It also notes that "lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others" is an indicator of minimal participation.
 
 
 6
 We believe that a "steerer" cannot be considered a "minimal participant" in the rather typical heroin distribution scheme involved here. "Steerers" play an important role in street-level drug transactions, directing buyers to sellers in circumstances in which the sellers attempt to conceal themselves from casual observation. Without "steerers," buyers would either find it difficult to locate sellers or sellers would have to risk exposure to public view. Papathanasion admits to playing this role in the distribution scheme. Moreover, when approached by the undercover officer and asked where "Louie" could be found, he suggested, without further prompting, that Wilks was Louie's associate and had heroin for sale. This demonstrated his knowledge of the scheme and of the activities of other participants. Papathanasion was thus hardly "substantially less culpable" than the average member of the ring.
 
 
 7
 Alternatively, Papathanasion argues that he was a "minor participant" under Guidelines Sec. 3B1.2(b), thus reducing his offense level 11 to 9. We need not address this claim. Judge Walker noted at the sentencing that an eighteen-month term would still be within the Guidelines range after a two-level reduction and that he would impose the same sentence under a computation treating Papathanasion as a "minor participant." Where the sentencing court arrives at a sentence that is permissible for both the adjudicated level and a claimed reduced level and where the court indicates that a reduction in offense level would not affect the sentence determination, an appellate court need not address the merits of the claimed reduction. See United States v. Bermingham, 855 F.2d 925, 931 (2d Cir.1988).
 
 
 8
 Papathanasion also asserts that Judge Walker erred when he declined to depart downward from the 18-24 month sentencing range in consideration of his drug addiction and the relatively small amount of drugs involved. We do not reach the merits of this claim because a decision not to depart from the applicable Guidelines range is not appealable.
 
 
 9
 Prior to passage of the Sentencing Reform Act, appellate review of sentences was unavailable unless they exceeded statutory limits, resulted from material misinformation or were based upon constitutionally impermissible considerations. United States v. Dazzo, 672 F.2d 284, 289 (2d Cir.), cert. denied, 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982); United States v. Vasquez, 638 F.2d 507, 533-34 (2d Cir.1980), cert. denied, 454 U.S. 975, 102 S.Ct. 528, 70 L.Ed.2d 396 (1981). The Sentencing Reform Act expanded appellate review but limited it to certain categories of claims. Unless Papathanasion's claim concerning Judge Walker's failure to depart downward falls within one of these categories, therefore, appellate review is not available. See United States v. Fossett, 881 F.2d 976 (11th Cir.1989) (Sentencing Reform Act prohibits defendant from appealing sentencing judge's refusal to make downward departure); United States v. Davis, 878 F.2d 1299, 1301 (11th Cir.1989) (per curiam) (same).
 
 
 10
 The applicable provision of the Act, Section 3742,[2] provides for an appeal by a defendant where the claimed error falls within one of four categories defined in Subsection (a). Briefly stated, these are: (a)(1) the sentence was in violation of law; (a)(2) the sentence is based on an incorrect application of the Guidelines (as in Papathanasion's claim with regard to Guidelines Section 3B1.2); (a)(3) the sentence is outside the Guidelines range and is greater than the maximum set by the Guidelines--an upward departure; and (a)(4) the sentence was imposed for an offense for which no guideline has been promulgated and is plainly unreasonable. The government may appeal where the claim of error falls within one of four categories defined in Subsection (b). Subsections (b)(1), (b)(2) and (b)(4) are identical to the corresponding Subsections of (a). Subsection (b)(3), however, provides that where the sentence is outside the Guidelines range, the government may appeal only if it is less than the minimum set by the Guidelines--a downward departure.
 
 
 11
 Our examination of Papathanasion's claim begins with Section 3742(a)(1), which provides for appeals based on claims by a defendant that a sentence is "in violation of law." This Subsection could of course be read broadly to allow appeals based on any arguable claim of error in sentencing, including a claim that a particular sentence is unreasonably high or low. That reading, however, would make nonsense of Section 3742 by rendering its other subsections utterly superfluous. Congress hardly needed to add subsections authorizing appeals that claim an incorrect application of the Guidelines, that challenge sentences outside the Guidelines, or that question the reasonableness of sentences for offenses not governed by the Guidelines, if Subsection (a)(1) authorizes appeals of all sentences based on any arguable claim of error. The structure and relationship of the various subsections of Section 3742 thus indicate that, as the Senate Report states, Congress intended to provide only "a limited practice of appellate review of sentences." S.Rep. No. 225, 98th Cong., 2nd Sess. 149 (1983), reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3332 (hereinafter S.Rep. No. 225). Because a broad reading of Section 3742(a)(1) is untenable, the only sensible view of that provision is that it was largely intended to ensure that the appellate review previously available for claims that a sentence was in excess of the statutory maximum, was based on impermissible considerations, or was the result of some other demonstrable error of law, cf. United States v. Russell, 870 F.2d 18 (1st Cir.1989) (sentencing judge may have been unaware of power to depart from Guidelines), would be retained.
 
 
 12
 It also has been argued that Section 3742(a)(1) authorizes appeals based on a claim that a particular sentence violates 18 U.S.C. Sec. 3553(a). See D. Yellen, Appellate Review of Refusals To Depart, 1 Federal Sentencing Reporter 264 (Oct. 1988). Section 3553(a) states that a sentence shall be "sufficient, but not greater than necessary, to comply" with enumerated purposes of sentencing. These purposes[3] are so general, however, that such a reading of Section 3742(a)(1) would make every sentence appealable on grounds amounting to a claim of unreasonableness, thus rendering Subsections (a)(2), (a)(3) and (a)(4) superfluous.
 
 
 13
 Section 3742(a)(1) might also be construed to authorize Papathanasion's appeal based on a purported violation of Section 3553(b). Section 3553(b) directs that the sentencing judge "shall impose a sentence" within the appropriate Guidelines range unless the judge "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines" that justifies departure from the Guidelines. It has been argued that this provision makes departure mandatory in some circumstances and that a failure to depart in such a circumstance would be "in violation of law." See Yellen, supra, at 264. We do not believe that Congress intended such a result.
 
 
 14
 First, a decision not to depart from the Guidelines is inherently discretionary. See Guidelines Sec. 5K2.0 ("Presence of any such [aggravating or mitigating] factor may warrant departure from the guidelines, under some circumstances, in the discretion of the sentencing judge."); see also United States v. Diaz-Villafane, 874 F.2d 43, 49-50 (1st Cir.1989); United States v. Paulino, 873 F.2d 23, 25 (2d Cir.1989) (per curiam). Indeed, we stated in Paulino that the "assumption that the discretion not to depart would ever be exceeded" is a "doubtful" one. 873 F.2d at 25. The reason for that "doubt" is that the existence of an aggravating or mitigating circumstance "of a kind, or to a degree" not adequately considered by the Commission is still just one factor among many considerations that underlie a particular sentence. A decision not to depart thus may be based on the sentencing court's view of the importance of other countervailing factors, rather than an incorrect weighing of an inadequately considered circumstance, and appellate review would impinge directly on the exercise of discretion by the sentencing court. That would in turn contravene Congress's intent that the discretion of the sentencing court should "not be displaced by the discretion of an appellate court." S.Rep. No. 225 at 150, 1984 U.S.Code Cong. & Admin.News 3333.
 
 
 15
 Second, Congress did not intend to provide appellate review of sentences that are within the Guidelines correctly applied and are not illegal under Subsections (a)(1) or (b)(1). Subsections (a)(3), (a)(4), (b)(3) and (b)(4) do not purport to authorize appeals from sentences within the applicable Guidelines. The remaining Subsections, (a)(2) and (b)(2), allow appeals claiming that a sentence is based on "an incorrect application" of the Guidelines. Conceivably, this language might also be read broadly to allow appeals based on a claim that although the Guidelines offender/offense levels and characteristics were correctly calculated and various adjustments appropriately made, a sentence within the Guidelines was too high or too low.
 
 
 16
 We believe, however, that would be a misreading of the statute. Subsections (a)(2) and (b)(2) were intended to authorize appeals from sentences purportedly within the Guidelines only for claims that a sentence was incorrectly calculated or was based on clearly erroneous factual findings concerning offender/offense levels, characteristics or adjustments. As the Sentencing Commission has stated,
 
 
 17
 The sentencing judge must select a sentence from within the guideline range. If, however, a particular case presents atypical features, the Act allows the judge to depart from the guidelines and sentence outside the range. In that case, the judge must specify reasons for departure. 18 U.S.C. Sec. 3553(b). If the court sentences within the guideline range, an appellate court may review the sentence to see if the guideline was correctly applied. If the judge departs from the guideline range, an appellate court may review the reasonableness of the departure. 18 U.S.C. Sec. 3742.
 
 
 18
 U.S. Sentencing Comm'n, U.S. Sentencing Comm'n Guidelines Manual p 92 at 1.1 (Oct. 1987).
 
 
 19
 The language and legislative history of the Act strongly support the conclusion that "incorrect application" claims are to be distinguished from general claims that particular sentences are too high or too low. The language "incorrect application" of the Guidelines suggests a claim that a sentence violates specific directions in the Guidelines rather than a claim that a sentence consistent with those directions is incorrect. The language of Subsections (a)(2) and (b)(2) also conspicuously avoids mentioning the reasonableness of the sentence, in contrast to the explicit language of Subsections (a)(4) and (b)(4). Congress took the view that, a norm for each offense having been established by the Commission, only sentences departing from that norm called for appellate review. Departures thus must be accompanied by a statement of reasons and are subject to appellate review sought by the defendant in the case of an upward departure under Section 3742(a)(3) and by the government in the case of a downward departure under Subsection (b)(3). In contrast to the express provisions for statements of reasons for departures and for appellate review of those departures, Congress made no explicit provision either for statements of reasons or for appellate review of non-departures.
 
 
 20
 In explaining the need for appellate review, moreover, the Senate Report stated:
 
 
 21
 It is expected that most sentences will fall within the ranges recommended in the sentencing guidelines. Only if a judge believes that there is an offense or offender characteristic, not adequately considered by the Sentencing Commission, that justifies a sentence different from that provided in the applicable guideline should the judge deviate from the guideline's recommendation. If the sentence differs from the guidelines sentence, the judge is required to state specific reasons for the sentence outside the guideline. Because sentencing judges retain the flexibility of sentencing outside the guidelines, it is inevitable that some of the sentences outside the guidelines will appear to be too severe or too lenient.
 
 
 22
 S.Rep. No. 225 at 150-51, 1984 U.S.Code Cong. & Admin.News 3333-34 (emphasis added). There is no corresponding statement in the legislative history indicating a need to review sentences within the Guidelines because of a claim of wrongful failure to depart or that a particular sentence is "too severe or too lenient."
 
 
 23
 Congress's failure to provide appellate review of sentences within the Guidelines correctly calculated was thus a conscious decision consistent with its overall purpose. The very nature of the sentencing reform enterprise was to establish national standards narrowing the discretion of sentencing judges so as to attain a degree of uniformity. Each sentencing decision, however, raises a unique combination of considerations, and Congress recognized the need for providing a range of available sentences within each national standard to sentencing courts so they might tailor the sentence to the particular case. See S.Rep. No. 225 at 39; see also id. at 52-53; id. at 161. See generally 28 U.S.C. Sec. 994. Departures from that range are allowed only where the sentencing judge finds that an aggravating or mitigating circumstance not adequately considered by the Commission calls for such a departure. 18 U.S.C. Sec. 3553(b).
 
 
 24
 If not inexorable, the provision of appellate review solely for departures is understandable. Congress intended to expand appellate review in only a "limited" way. S.Rep. No. 225 at 149. Given the Guidelines' purpose of achieving a degree of uniformity in sentencing, see 28 U.S.C. Sec. 991(b)(1)(B), the need for appellate review of sentences outside the Guidelines is infinitely greater than the need for review of those within the stipulated range. Sentences within the Guidelines may be deemed to be reasonable and within the exclusive discretion of the sentencing court solely because of the Commission's blessing of the permissible range. A provision for appellate review of such sentences might be thought to be desirable, but it is surely not essential. In contrast, appellate review of sentences outside the Guidelines is essential because, absent such review, enforcement of the Guidelines would be left exclusively to the judgment of each sentencing court, and the purpose of achieving a degree of uniformity might be thwarted.
 
 
 25
 That Congress opted for appellate review only where it was most needed is evident from the fact that it declined to authorize full review even of departures, limiting review of departures upward to defendants and departures downward to the government "in order to avoid unnecessary appeals."[4] This is a non-trivial limitation on appellate rights. Although defendants generally may suffer more from upward departures than from downward departures perceived by them to be inadequate, the failure to afford appellate rights to defendants facing long sentences that include small downward departures is of considerable effect.
 
 
 26
 To be sure, review of sentences outside the Guidelines will involve appellate courts in reviewing the reasonableness of sentences and will impinge on the exercise of sentencing courts' discretion. However, the discretion of sentencing judges to sentence within the Guidelines is obviously far greater than the discretion to depart. Moreover, we have no doubt that the standard for review of departures will evolve over time in a way that requires a showing either of a clear error of law or an abuse of discretion.
 
 
 27
 Affirmed in part, dismissed in part.
 
 
 
 *
 The Honorable Edward D. Re, Chief Judge, United States Court of International Trade, sitting by designation
 
 
 [1]
 Guidelines Sec. 3B1.2 provides:
 Based on the defendant's role in the offense, decrease the offense level as follows:
 (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
 (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
 In cases falling between (a) and (b), decrease by 3 levels.
 
 
 [2]
 The pertinent provisions of 18 U.S.C. Sec. 3742 read:
 (a) Appeal by a defendant.--
 A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence--
 (1) was imposed in violation of law;
 (2) was imposed as a result of an incorrect application of the sentencing guidelines; or
 (3) is greater than the sentence specified in the applicable guideline range to the extent that the sentence includes a greater fine or term of imprisonment, probation, or supervised release than the maximum established in the guideline range, or includes a more limiting condition of probation or supervised release under section 3563(b)(6) or (b)(11) than the maximum established in the guideline range; or
 (4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.
 (b) Appeal by the Government.--
 The Government, with the personal approval of the Attorney General or Solicitor General, may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence--
 (1) was imposed in violation of law;
 (2) was imposed as a result of an incorrect application of the sentencing guidelines;
 (3) is less than the sentence specified in the applicable guideline range to the extent that the sentence includes a lesser fine or term of imprisonment, probation, or supervised release than the minimum established in the guideline range, or includes a less limiting condition of probation or supervised release under section 3563(b)(6) or (b)(11) than the minimum established in the guideline range; or
 (4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.
 
 
 [3]
 18 U.S.C. Sec. 3553(a)(2) enumerates these purposes:
 (2) the need for the sentence imposed--
 (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
 (B) to afford adequate deterrence to criminal conduct;
 (C) to protect the public from further crimes of the defendant; and
 (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner....
 
 
 [4]
 S.Rep. No. 225 at 154, 1984 U.S.Code Cong. & Admin.News 3337. The Senate Report stated:
 The limitations on both defendant and government appeal of sentences outside the guidelines based upon the size of the sentence imposed are further restrictions on the use of appellate review of sentences in order to avoid unnecessary appeals. Clearly, sentences at the bottom range are less likely to be abusive to defendants. The same applies to the government when sentences imposed approach the upper range of sentences recommended. The guidelines, therefore, provide a practical basis for distinguishing the cases where review is most needed from those where appeal would most likely be frivolous.
 * * *
 [I]f the court determines that a sentence outside the guidelines is unreasonable and too high, and the appeal was filed by the defendant, it is to set aside the sentence and either impose a lesser sentence, remand for imposition of a lesser sentence, or remand for further sentencing proceedings.
 If the court determines that a sentence outside the guidelines is unreasonable and too low, and the appeal was filed by the government, the court is to set aside the sentence and either impose a greater sentence, remand for imposition of a greater sentence, or remand for further sentencing proceedings.
 Id. at 154-55, 1984 U.S.Code Cong. & Admin.News 3338.